# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT BOYER,

                    Plaintiff,

      v.

MICHAEL MULVEY,

                    Defendant.

CIVIL ACTION NO. 3:19-CV-00242

(MEHALCHICK, J.)

## <u>MEMORANDUM</u>

This civil rights action was initiated by Plaintiffs Tamra Smith ("Smith")[1] and Robert Boyer ("Boyer") on February 12, 2019, by the filing of a complaint against Defendants Wyoming Borough ("the Borough") and Michael Mulvey ("Mulvey"). (Doc. 1). In the complaint, Boyer asserts claims under 42 U.S.C. § 1983 for violations of the Fourth Amendment right to be free from unlawful search and seizures. (Doc. 1). Presently before the Court are cross-motions for summary judgment. (Doc. 104; Doc. 112). On August 2, 2024, Boyer filed a motion seeking partial summary judgment on Count Two of the complaint. (Doc. 104). On November 6, 2024, Mulvey moved for summary judgment on the complaint in its entirety. (Doc. 112). For the reasons set forth herein, Mulvey's motion for summary judgment shall be **GRANTED** as to Count One and **DENIED** as to Count Two. (Doc. 112). Boyer's motion for partial summary judgment shall be **DENIED**. (Doc. 104)**.**

---

[1] On August 30, 2019, Smith was terminated from this action and on August 20, 2019 Boyer, as Executor of the Estate of Smith, was substituted in place of her. (Doc. 28).

I.    **BACKGROUND AND PROCEDURAL HISTORY**

This factual background is taken from the parties' statements of material facts and accompanying exhibits, as well as the parties' responses thereto. (Doc. 104; Doc. 105; Doc. 109; Doc. 112; Doc. 113; Doc. 114; Doc. 115; Doc. 116; Doc. 119; Doc. 120; Doc. 123). This case stems from Mulvey's investigation of two former employees of Wyoming Borough, Boyer and Smith. (Doc. 1).

The first investigation deals with Boyer. (Doc. 105; Doc. 115). From January 2006 to January 2018, Boyer was the mayor of Wyoming Borough. (Doc. 105, ¶ 2; Doc. 115, ¶ 2). On or about May 18, 2018, Mulvey completed a search warrant application along with an affidavit of sworn probable cause to search Boyer's residence and submitted it to Magisterial District Judge Joseph J. Carmody. (Doc. 114, ¶ 48; Doc. 120, ¶ 48). In the search warrant application for Boyer's residence, Mulvey alleges that Boyer engaged in a conflict of interest under the Pennsylvania Public Official and Employee Ethics Act ("Ethics Act") by supporting a certain grant application while mayor. (Doc. 105, ¶¶ 27-29; Doc. 114, ¶¶ 46-49; Doc. 115, ¶¶ 27-29; Doc. 120, ¶¶ 46-49). The grant application Mulvey references is the West Wyoming Firehouse Addition Renovation Project ("LSA Grant"). (Doc. 105, ¶ 25; Doc. 115, ¶ 25). The LSA Grant sought to increase space and update heating and cooling systems in the facility used by the West Wyoming Hose Company, a volunteer fire and ambulance service. (Doc. 105, ¶ 25; Doc. 115, ¶ 25). Boyer authored a letter supporting the LSA Grant but did not vote on the application. (Doc. 105, ¶ 26; Doc. 115, ¶ 26). The LSA Grant was approved by the Wyoming Borough Council. (Doc. 105, ¶ 25; Doc. 115, ¶ 25). Mulvey alleges that Boyer's letter of support violated the Ethics Act because Boyer owns a food business that at times used the West Wyoming Hose Company's banquet hall, a connection that Boyer did not disclose

2

in his letter. (Doc. 105, ¶¶ 27-30; Doc. 114, ¶ 49; Doc. 115, ¶¶ 27-30; Doc. 120, ¶ 49). Boyer contends that any space he would have used at the facility would not have been impacted by the expansions funded by the LSA Grant, and even if spaces that he used would be impacted, that economic benefit would have been *de minimis*, and thus not have created a conflict of interest. (Doc. 105, ¶¶ 27-30; Doc. 114, ¶ 49; Doc. 115, ¶¶ 27-30; Doc. 120, ¶ 49). Mulvey's search warrant application for Boyer's residence was approved, and a search was executed on May 18, 2018. (Doc. 105, ¶¶ 31-33; Doc. 115, ¶¶ 31-33).

The second investigation relevant to this matter involves Smith, Boyer's girlfriend at all times relevant to this matter. (Doc. 114, ¶¶ 1, 4-8; Doc. 120, ¶¶ 1, 4-8). From October 2010 through November 2018, Smith was the borough manager for Wyoming Borough, as well as the treasurer of the Wyoming Library until 2016. (Doc. 105, ¶ 3; Doc. 115, ¶ 3; Doc. 114, ¶ 9; Doc. 120, ¶ 9). On August 21, 2015, Special Agent Joseph F. Noone of the Federal Bureau of Investigation (FBI) opened an investigation into Smith for alleged corruption. (Doc. 114, ¶ 1; Doc. 120, ¶ 1). During their romantic relationship, as well as during both Smith and Boyer's terms as borough manger and mayor respectively, Smith owned an accounting and financial services business. (Doc. 114, ¶ 16, Doc. 120, ¶ 16). She had access to financial information including debit cards, checkbooks, and physical documents related to the library and Wyoming Fire Department and Hose Company in her capacity as borough employee and through her personal business. (Doc. 114-4, at 2-4). Smith failed to turn over such records and documents related to investigations into her alleged corruption. (Doc. 114-4, at 2-4). Additionally, postage purchased by Smith on the library debit card went missing during her time with the library. (Doc. 114, at 4; Doc. 114-4, at 4; Doc. 120, at 7-8). On or about January 24th, 2018, Mulvey and the IRS executed a search warrant on Smith's home. (Doc. 114-2, ¶

14).

On February 12, 2019, Smith and Boyer filed the instant complaint, arguing that the searches of their homes were executed without probable cause, violating their Fourth Amendment rights to be free from unlawful search and seizures. (Doc. 1). The summary judgment motions filed are now ripe for disposition.

## II. LEGAL STANDARDS

### A. MOTION FOR SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." *See* M.D. Pa. L.R. 56.1.

A federal court should grant summary judgment "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must go beyond the pleadings with affidavits or declarations, answers to interrogatories, or the like to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex,* 477 U.S. at 324. The non-movant must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323. Furthermore, mere conclusory allegations and self-serving testimony, whether made in the complaint or a sworn statement, cannot be used to obtain or avoid summary judgment when uncorroborated and contradicted by other evidence of record. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Thomas v. Delaware State Univ.*, 626 F. App'x 384, 389 n.6 (3d Cir. 2015) (not precedential) ("[U]nsupported deposition testimony, which is contradicted by the record, is insufficient to defeat summary judgment."); *Nat'l Labor Rel. Bd. v. FES*, 301 F.3d 83, 95 (3d Cir. 2002) ("[The plaintiff's] testimony . . . amounts to an

unsupported, conclusory assertion, which we have held is inadequate to satisfy the movant's burden of proof on summary judgment.").

B. 42 U.S.C. § 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

"Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *See Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

III. DISCUSSION

A. FOURTH AMENDMENT CLAIMS

The complaint brings claims for violations of the Fourth Amendment related to Mulvey's search of Smith and Boyer's residences. (Doc. 1). The parties dispute the threshold

6

issue of whether Mulvey's searches of the residences were properly supported by probable cause. (Doc. 109; Doc. 119).

The Fourth Amendment states, in pertinent part, that "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause...." U.S. CONST. Amend. IV. Whether a search or seizure is unreasonable "depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 616 (1989) (quoting *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985)). A court's inquiry involves assessing "on the one hand, the degree to which [the search or seizure] intrudes upon an individual's privacy and, on the other, the degree to which [the search or seizure] is needed for the promotion of legitimate governmental interests." *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999).

"A search warrant may be issued only if there is probable cause to believe that evidence of criminal activity will be found on the premises or person searched." *Lesoine v. Cnty. of Lackawanna*, No. CIV.A. 3:98-CV-0764, 2000 WL 572466, at *4 (M.D. Pa. May 5, 2000) (citing *Carroll v. United States*, 267 U.S. 132 (1925)). When considering whether a warrant was properly supported by probable cause, a court must take into consideration "the totality of circumstances." *See Lesoine*, 2000 WL 572466, at *4 (citing *Illinois v. Gates*, 462 U.S. 213, 235 (1983)); *Gomez v. Markley*, No. CIV.A. 07-868, 2011 WL 113163, at *4 (W.D. Pa. Jan. 13, 2011) ("Probable cause requires 'a fair probability that contraband or evidence of a crime will be found in a particular place,' and is based on the 'totality of the circumstances' available at the time of the search") (quoting *Gates*, 462 U.S. at 238). To find a Fourth Amendment violation based on an improper search warrant, a plaintiff must prove "(1) that the affiant

knowingly, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and, (2) that such statements or omissions are material to the finding of probable cause." *Lesoine*, 2000 WL 572466, at *4 n.2.

### 1. Whether Mulvey Had Probable Cause to Search Smith's Home

Mulvey moves for summary judgment on Count One of the complaint, which asserts Fourth Amendment claims related to his search of Smith's home. (Doc. 1). Mulvey contends that he had probable cause to search Smith's residence, and as such, Smith's Fourth Amendment rights were not violated. (Doc. 113, at 10-11). According to Mulvey, none of the information in his application for a search warrant of Smith's residence was misleading, nor were there any material omissions. (Doc. 113, at 10). Boyer's opposition to summary judgment on Count One relies entirely on the assertion that much of the basis for Mulvey's probable cause affidavit was statements and information that constituted hearsay. (Doc. 119, at 20-22). However, Boyer does not seem to contest Mulvey's assertion that no information in his search warrant application for Smith's home was misleading. (Doc. 119, at 20-22).

Hearsay does not implicate the analysis for whether Mulvey had probable cause. *Warner v. McCunney*, No. CIV.A. 05-1248, 2005 WL 2811738, at *3 (E.D. Pa. Oct. 27, 2005) ("The evidence establishing probable cause may be hearsay."), *aff'd*, 259 F. App'x 476 (3d Cir. 2008) (citing *Franks v. Delaware*, 438 U.S. 154, 165 (1978)); *Evans v. City of Newark*, No. CV1400120KMMAH, 2023 WL 2535283, at *18 n.9 (D.N.J. Mar. 16, 2023) ("[w]hatever its merits, the hearsay argument is irrelevant for purposes of evaluating the probable cause possessed by the police. Police may rely on hearsay evidence to supply the probable cause necessary to make an arrest.") (citations omitted); *Miller v. Ctr. Cnty.*, No. 4:15-CV-1754, 2016 WL 4582063, at *7 (M.D. Pa. Sept. 1, 2016) (noting that hearsay may support an affidavit of

probable cause and stating "[i]n judging whether particular averments establish probable cause, we are mindful of the principle that probable cause [. . .] is a practical, non-technical conception requiring a consideration of the totality of the circumstances"), *aff'd sub nom. Miller v. Cnty. of Ctr.*, 702 F. App'x 69 (3d Cir. 2017); *Smith v. Angelo*, No. CV 14-1066-GMS, 2017 WL 2276985, at *1 n.2 (D. Del. May 25, 2017), *aff'd*, 765 F. App'x 757 (3d Cir. 2018) ("Further, the Third Circuit has made clear that 'probable cause may rest upon hearsay'") (quoting *Torres v. City of Philadelphia*, No. 13–2710, 2016 WL 7396723, at *2 (3d Cir: Dec. 21, 2016); *Franks*, 438 U.S. at 164–65 ("probable cause may be founded upon hearsay and upon information received from informants"); *United States v. Mathis*, 357 F.3d 1200, 1205 (10th Cir. 2004) (holding that hearsay is acceptable support for finding probable cause) "[H]earsay from unknown or unnamed individuals has been recognized as acceptable support for a finding of probable cause."); *Hart v. Parks*, 450 F.3d 1059, 1066 (9th Cir. 2006) ("Police may rely on hearsay and other evidence that would not be admissible in a court to determine probable cause.").

Here, Smith was being investigated for corruption and certain suspicious financial activities. (Doc. 114, at 4; Doc. 114-4, at 2-4; Doc. 120, at 7-8). The undisputed record contains evidence that Mulvey had information and reason to believe that Smith had access to financial accounts for both Wyoming Borough and the Wyoming Hose Company; that documents she possessed had gone missing during her tenure as borough manager and treasurer of the library; that she ran her accounting business out of her home; and that there was suspicious use of funds related to certain purchases of postage Smith had made. (Doc. 113, at 10-11; Doc. 114-4, at 2-4). Mulvey's reasonable belief that Smith may have had information or records in her home related to missing financial documents formed a basis of

probable cause, even if the suspicion was based on hearsay. *See Evans*, 2023 WL 2535283, at *18 n.9; *see also Lesoine*, 2000 WL 572466, at *4 (finding that a search warrant is supported by probable cause when an officer has reason to believe evidence of criminal activity may be located in that searched location).

Having found that the warrant for the search of Smith's reference was properly supported by probable cause, the Court finds that Mulvey is entitled to summary judgment on Count One. *See Bhd. of Locomotive Eng'rs v. Rossi*, 290 F. App'x 518, 519 (3d Cir. 2008) (affirming district court's grant of summary judgment to defendants when there was a warrant based upon probable cause and stating "[t]he critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property for which entry is sought."). Accordingly, Mulvey's motion for summary judgement on Count One is **GRANTED**. (Doc. 112).

### 2.  Whether Mulvey Had Probable Cause to Search Boyer's Home

Both parties move for summary judgment on Count Two, Boyer's Fourth Amendment claim related to Mulvey's search of his own home. (Doc. 1; Doc. 104; Doc. 112). Boyer submits that he is entitled to summary judgment because Mulvey's search warrant application included material omissions or misstatements, and for that reason, Mulvey's search lacked probable cause. (Doc. 119, at 6). Mulvey contends that his search warrant application was predicated upon probable cause and that the probable cause affidavit included no material falsehoods. (Doc. 113, at 7-10).

The search warrant for Boyer's residence was based upon Mulvey's alleged belief that he would find evidence of Boyer's potential violations of the Ethics Act within the searched

property. *See Lesoine*, 2000 WL 572466, at *4. Per the Ethics Act, "[no] public official or public employee shall engage in conduct that constitutes a conflict of interest." 65 Pa.C.S.A. § 1103. Under the statute, a "conflict of interest" consists of:

> "Use by a public official or public employee of the authority of his office or employment or any confidential information received through his holding public office or employment for the private pecuniary benefit of himself, a member of his immediate family or a business with which he or a member of his immediate family is associated. The term does not include an action having a *de minimis* economic impact or which affects to the same degree a class consisting of the general public or a subclass consisting of an industry, occupation or other group which includes the public official or public employee, a member of his immediate family or a business with which he or a member of his immediate family is associated."

> 65 Pa.C.S.A. § 1102.

A *de minimis* economic impact consists of "[a]n economic consequence which has an insignificant effect." 65 Pa.C.S.A. § 1102. Though there is not a precise definition of what constitutes a *de minimis* benefit to avoid triggering a violation of the Ethics Act, courts have considered factors such as the monetary value of the benefit. *See Thomas Bixler, v. State Ethics Comm'n*, 2004 WL 3414060, at *11 (finding that a violation of the Ethics Act was not triggered when a public official participated in decisions resulting in maintenance services for Township Vehicles by a fleet service by which he was employed, because the total profit from the repairs was $561.77, a *de minimis* benefit); *see also Seropian v. State Ethics Comm'n*, 20 A.3d 534 (Pa. Commw. Ct. 2011) (holding that use of a District-owned computer for non-work purposes for 780 minutes constituted a *de minimis* benefit to the petitioner because the benefit was worth $640.11*); see also Kraines v. Pennsylvania State Ethics Comm'n*, 805 A.2d 677, 682-83 (Pa. Commw. Ct. 2002) (holding that a public official did not violate the Ethics Act when she

signed off on county checks to her spouse for pathologist fees in excess of amounts set forth between her spouse and the county's contract in part because the payments received had an "insignificant adverse economic impact," since the fees paid were lower than fees charged by other pathologists in the area); *see also Pulice v. State Ethics Comm'n,* 713 A.2d 161, 168 (finding a *de minimis* economic impact regarding a salary increase of $1,672 when considered with the greater responsibility and qualifications required by the worker). Additionally, in determining whether a suspected Ethics Act violation has occurred, courts consider whether the benefit affected to the same degree a class consisting of an occupation or other group. *See Pulice,* 713 A.2d at 166 (finding that a public official did not violate the Ethics Act by maintaining a joint bank account with her son-in-law who received a salary increase even if she did receive a private pecuniary benefit, because the "amount of the salary increase affected to the same degree every member of the class of school administrators [. . .] the increase was not in the form of a bonus or other individual increase"); *see also Bixler,* 2004 WL 3414060, at *9 (finding no violation because there was a *de minimis* economic impact and because Bixler was a member of a subclass of truck mechanics). Finally, Pennsylvania courts have emphasized that to violate § 1103(a), a public official must "use" the public office to obtain financial gain. *McGuire v. State Ethics Commission,* 657 A.2d 1346, 1351 (Pa. Commw. Ct. 1995). While the Ethics Act does not define the term "use," "'[t]his Court has held that 'use' of public office requires action by a public official that in some way facilitates his receipt of compensation to which he is not entitled." *Kraines,* 805 A.2d at 681 (citing *McGuire,* 657 A.2d at 1351).

Here, there are material facts in dispute regarding the degree of omissions and the materiality of the misleading statements in the search warrant application. Mulvey indicated in his affidavit of probable cause that the kitchen was being expanded. (Doc. 105-3, at 24, 28;

Doc. 115, ¶ 30). A reasonable juror may assume that this means that the renovations were aimed, if not primarily, at least to a substantial degree, towards kitchen improvements. If as much is true, it follows that Boyer, as mayor, supported the LSA Grant that would primarily benefit Boyer personally. This would give Mulvey reason to believe evidence of an Ethics Act violation may be found in Boyer's home. However, Boyer has presented evidence that Mulvey's description of the LSA Grant was misleading and contained material admissions in reckless disregard of the truth. (Doc. 105-3, at 24, 28; Doc. 119, at 8-10). The record contains evidence that the only construction planned under the LSA Grant that affected the kitchen would have been that of a new door connecting the kitchen to a newly constructed area adjacent to the kitchen. (Doc. 105-3, at 24, 28). In fact, the kitchen is only mentioned twice in the 94-page LSA Grant. (Doc. 105-3). Thus, a reasonable juror could find that such an omission was in reckless disregard for the truth. The Court also finds that a reasonable juror could conclude that such omissions materially impacted Magistrate Judge Carmody's approval of the search warrant. *See, e.g., Dempsey v. Bucknell University*, 834 F.3d 457, 468-70 (3d Cir. 2016). As such, there is a question of material fact regarding whether the warrant was constitutional. *See Steinhauer v. E. Pennsboro Area Sch. Dist.*, No. 1:21-CV-02030, 2024 WL 3905037, at *4 (M.D. Pa. Aug. 22, 2024) ("[f]or a warrant to be constitutionally suspect, 'misstatements and omissions must have been material, or necessary, to the finding of probable cause.'" (quoting *Pinkney v. Meadville, Pennsylvania*, 95 F.4th 743, 748-49 (3d Cir. 2024) (quotations omitted)) (citing *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997)).

Accordingly, both motions for summary judgment on Count Two are **DENIED**. (Doc. 104; Doc. 114).[2]

B. QUALIFIED IMMUNITY

Mulvey also moves for summary judgment on the grounds that he is entitled to qualified immunity for each of the claims in the complaint. (Doc. 113, at 11-14). Under the doctrine of qualified immunity, law enforcement officers, like other public officials, performing discretionary duties within the scope of their employment, are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The two-pronged test for whether qualified immunity applies requires this court to determine (1) "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right" and (2) "whether the right at issue was clearly established at the time of a defendant's alleged misconduct." *Montanez v. Thompson*, 603 F.3d 243, 250 (3d Cir.2010) (quoting *Pearson v. Callahan*, 555 U.S. 223 (2009)).

Given the discussion above, when viewed in the light most favorable to Boyer, a reasonable juror could conclude that a reasonable juror could find Fourth Amendment constitutional violations. The Court, therefore, must proceed to the second step of the analysis to determine whether the constitutional rights at issue were clearly established at the time of

---

[2] The Court further emphasizes that there are facts in dispute regarding whether Boyer's benefit from the kitchen door or facility expansion outside of the kitchen constitute an Ethics Act violation. At this stage, reasonable jurors could differ in their conclusions about whether the benefit of the new expansions, to the kitchen or other areas, would have a *de minimis* economic impact on Boyer or whether the benefit affected a class consisting of the same occupation (i.e. caterers) to the same degree. *See Bixler*, 2004 WL 3414060, at *9.

the alleged violation. This requires the Court to ask the question of whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Montanez, 603 F.3d at 250*.

If the right violated was "clearly established," then the official is not entitled to immunity. "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards, 566 U.S. 658, 664 (2012); Saucier v. Katz, 533 U.S. 194, 202 (2001)*. "This is an objective inquiry, to be decided by the court as a matter of law." *Doe v. Groody, 361 F.3d 232, 238 (3d Cir. 2004)*. "[E]xisting precedent must have placed the statutory or constitutional question beyond debate" for a right to be clearly established. *Reichle, 566 U.S. at 664*. The Supreme Court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Taylor v. Barkes, 575 U.S. 822, 825 (2015)*. Essentially, "in light of pre-existing law the unlawfulness must be apparent." *Hope v. Pelzer, 536 U.S. 730, 739 (2002)*. This may be the case "despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct violated constitutional rights." *Hope, 536 U.S. at 740* (citation omitted).

Here, the right to be free from unlawful searches except on probable cause was clearly established at the time of Mulvey's search of Boyer's residence. *Messerschmidt v. Millender, 565 U.S. 535, 547 (2012)* (finding that qualified immunity is lost when an officer's search warrant lacks probable cause) (citing *United States v. Leon, 468 U.S. 897, 923 (1984)*). Further, as discussed *supra*, there are material facts in dispute regarding whether Mulvey's search of Boyer's residence was properly supported by probable cause. Boyer's rights to be free from

15

searches of their properties predicated on warrants that lack probable cause was "grounded in well-settled law and thus, on the record of this case, a reasonable juror could find that 'it would be clear to a reasonable officer that [Mulvey's] conduct was unlawful in the situation [he] confronted.'" *Andrews v. Scuilli*, 853 F.3d 690, 705 (3d Cir. 2017) (quoting *Saucier*, 533 U.S. at 202).

Accordingly, Mulvey's motion for summary judgment on the issue of qualified immunity is **DENIED**.[3] (Doc. 113); *see Contreras v. Conrad*, No. 3:17-CV-02360, 2020 WL 2193429, at *9 (M.D. Pa. May 6, 2020) (denying summary judgment on qualified immunity argument because genuine issues of material fact existed as to whether defendants violated plaintiff's Fourth Amendment rights); *Moore v. Monaghan*, No. CV 19-4400, 2021 WL 39631, at *9 (E.D. Pa. Jan. 5, 2021) (denying entry of summary judgment on qualified immunity because genuine issues of material fact existed whether defendants violated plaintiff's Fourth Amendment rights); *Figueroa v. Moyer*, No. 3:21-CV-601, 2023 WL 4195846, at *14 (M.D. Pa. Jan. 31, 2023), *report and recommendation adopted*, No. CV 3:21-601, 2023 WL 4188024 (M.D. Pa. June 26, 2023) ("The factual dispute regarding the issue of probable cause also defeats the defendants' argument that they are entitled to qualified immunity.").

---

[3] Although the Court denies Mulvey's motion for summary judgment on Boyer's Count I Fourth Amendment claims, Mulvey may again raise qualified immunity as a defense after the fact finder has resolved the disputed issues. *See Geist v. Ammary*, 40 F. Supp. 3d 467, 483 (E.D. Pa. 2014). ("Qualified Immunity, however, may be raised again as a defense after the disputed issues of fact are resolved.").

IV.    CONCLUSION

For the foregoing reasons, Mulvey's motion for summary judgment is **GRANTED** as to Count One and **DENIED** as to Count Two. (Doc. 112). Count One is **DISMISSED**. (Doc. 1). Boyer's motion for partial summary judgment as to Count Two is **DENIED**. (Doc. 104).

An appropriate Order follows.


**Dated: March 18, 2025**                    *s/ Karoline Mehalchick*
                                             **KAROLINE MEHALCHICK**
                                             **United States District Judge**